IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
UNITED STATES OF AMERICA,       )
                                )
              Plaintiff,        )
                                )
v.                              )     No. 04-10174-01
                                )     No. 08-1057-MLB
                                )
BRUCE SEARS,                    )
                                )
              Defendant.        )
                                )
```

**MEMORANDUM AND ORDER**

Before the court is defendant's pro se motion pursuant to 28 U.S.C. § 2255 filed February 25, 2008 (Doc. 100).

Background

Some of the background relevant to portions of defendant's claims can be found in the Tenth Circuit's Order and Judgment in United States v. Sears, No. 05-3128, 191 Fed. Appx. 800, 2006 U.S. App. LEXIS 21271 filed Aug. 17, 2006. According to the unobjected-to presentence report, defendant is an armed career criminal with a criminal history category of VI.

Defendant was initially charged by complaint with a violation of 18 U.S.C. § 922(g)(1) filed July 16, 2004 (Doc. 1). He was then charged by indictment returned July 29, 2004 with several additional counts (Doc. 9). An experienced federal public defender was appointed to represent defendant and he filed several motions on defendant's behalf (Docs. 21, 22, 23, 24 and 25). On October 6, 2004, defendant's motion to suppress was set for hearing on October 26, 2004. One day before the hearing, retained counsel entered their appearance for

defendant (Doc. 39).  On the day of the hearing, retained counsel moved for a continuance, which the court denied.  Nevertheless, retained counsel did a quite acceptable job in handling the hearing. Thereafter, retained counsel filed additional motions on defendant's behalf (Docs. 46 and 47) which ultimately were overruled (Order filed November 22, 2004, Doc. 52).  The case proceeded to a jury trial beginning November 30, 2004.  On December 6, 2004, the jury returned a verdict of guilty on counts 4, 5, 6 and 7 and mistrial was declared as to counts 1, 2 and 3 (Doc. 57).  Defendant was sentenced on February 22, 2005 (Doc. 61).  Defendant was represented on appeal by appointed counsel.[1]  A petition for certiorari was denied on February 20, 2007 (Case No. 06-8996).

The majority of defendant's motion (pp. 9-38) is devoted to various alleged defects in his trial, e.g., overbreadth of the search warrant and deficiencies in the warrant search, the court's failure to grant a continuance of the suppression hearing, errors in admission of in-court identification, insufficiency of evidence and Brady violations.  Only the search warrant issues were raised on appeal. In the remainder of his motion (pp. 39-43), defendant asserts that his retained trial and appellate counsel failed to properly present what defendant believes are the inadequacies attendant to the search warrant and warrant search as well as trial errors regarding admissibility of in-court identification and the court's "quashing his subpoenas tecum without first conducting in camera inspection of the

---

[1]The docket sheet is somewhat unclear regarding whether appellate counsel was appointed or retained.  The court will accept defendant's representation that counsel was retained.

requested document."

## Trial Counsels' Performance

Defendant's complaints regarding his trial counsels' performance are conclusory:

> A reasonable attorney would've investigated the documentary evidence which would have revealed that the search warrant was impermissibly over-broad. Furthermore, a reasonable attorney would've also investigated the Government's witnesses specifically detective Lisa Walker and the other police officers who executed the search warrant on petitioner's residence which would have revealed that the officers executed the warrant with "flagrant disregard" for its terms. He would have then filed a motion to suppress on the above grounds, gotten the evidence (cell phone, silver handgun and the remnants of a Red Lobster check presenter) suppressed and petitioner would have been acquitted because there was negligible evidence of guilt other than the evidence seized from his home. This inaction is far from trial strategy. It's more consistent with oversight as a result of Williamsons lack of experience as an attorney which prejudiced the petitioner. . . .

The supposed documentary evidence which counsel should have "investigated" is not specifically identified. Rather, defendant "suspects" that the Wichita Police Department and/or government "suppressed" exculpatory evidence which would have come to light if the court had conducted an "in camera" inspection of police records before it quashed several subpoenas duces tecum served by his retained counsel during trial seeking "all reports and documents" in the possession of the police (Doc. 54). Counsel cannot be ineffective because they sought the "evidence" and the court's ruling, which was based on Fed. R. Crim. P. 17(h), cannot be blamed on counsel and, in any event, has not been shown to be erroneous.

Defendant's complaints regarding the performance of his retained trial counsel must be considered in light of the following colloquy

-3-

which took place at the time counsel entered their appearance:

    THE COURT: All right. This is United States against Sears. 04-10174. Blair Watson is here for the Government. Who's here for the Defendant?

    MR. SHORES: Your Honor, Sean Shores and Lawrence Williamson appears on behalf of Bruce Sears.

    THE COURT: Have you entered your appearances?

    MR. SHORES: Yes, Your Honor.

    THE COURT: Now, before we get started on this, we need to have some clear understandings about things here. Mr. Shores, when did you pass the bar?

    MR. SHORES: July, this past July.

    THE COURT: Mr. Williamson, when did you pass the bar?

    MR. WILLIAMSON: July of 2003, Your Honor.

    THE COURT: All right. Now, I'm not going to interfere -- you may be seated, gentlemen. I'm not going to interfere with someone's choice of counsel except to say this, Mr. Sears. If you hire these gentlemen to represent you and then you become dissatisfied with their representation, I will not relieve them. You're stuck with them forever. You understand that?

    DEFENDANT MR. SEARS: Yes, sir.

    THE COURT: You had, in Mr. Henry, one of the most experienced lawyers that appears in my court. He's here today. He's handled hundreds and hundreds of cases; but for some reason you have chosen these two gentlemen. And I don't have any reason to think they won't do a good job

for you; but what I'm telling you is you're facing -- what you're facing in this case is potentially life in prison. Is that correct, Mr. Watson?

MR. WATSON: That's correct. In fact, Your Honor, one of the first things I'm going to do is file the information with the Court and deliver that to the Defendant which will mandate, upon conviction of any of these counts, a minimum of life in prison.

THE COURT: And in the federal system, that means life. You'll never get out. So you need to clearly understand what kind of situation that you are in and how serious that is. Now, of course, as you sit here today, you're presumed innocent. It's going to be up to the Government to prove that you're guilty of any or all of these charges, if the Government can. And the Government may not be able to do that. I'm not passing in any way on the weight of the Government's evidence, whether you are guilty or not guilty. As far as I'm concerned, as you're sitting here today, you're presumed innocent. And that presumption will remain with you until you're convicted, if you are convicted. But if you are convicted, you're facing a life sentence. I will not relieve your counsel if a month from now or any time you say: Oh, I made a mistake, I want Mr. Henry back. I won't do it. You're stuck with 'em. I want you to understand that going in. And the other thing I want you to understand is -- going in -- and the reason I asked these lawyers that is not to

embarrass them because I have no reason to think that they can't do a fine job for you; but don't come back to me later on if you're convicted and file a motion saying that your lawyers are just out of law school, just passed the bar and they didn't know what they were doing. That's why I'm going through this here to today. Things happen in these cases that happen down the road a year, two years down the road, and I want to make sure that you understand where you're at now. Do you understand everything I've said here today?

    DEFENDANT MR. SEARS: Yes, sir.

    THE COURT: And it's your decision to have these lawyers represent you, not Mr. Henry?

    DEFENDANT MR. SEARS: Yes, sir.

    THE COURT: And it's not somebody else's decision? Because at some point in time you represented to a U.S. Magistrate judge that you could not afford a lawyer. Now you've hired these gentlemen, or someone has hired these gentlemen for you; but that person can't make the decision whether or not they are to -- they're to represent you. It has to be your decision. You understand that?

    (Defendant nods in the affirmative.)

    THE COURT: Yes?

    DEFENDANT MR. SEARS: Yes, sir.

    THE COURT: And is it your decision that they represent you in this case?

        DEFENDANT MR. SEARS: Yes, sir.

        THE COURT: All right. Mr. Henry, you're relieved.

        MR. HENRY: Thank you, Your Honor.

(Doc. 86 at 3-6).

Thus, what defendant now <u>alleges</u> to be retained counsels' inexperience and lack of knowledge regarding how to defend a federal criminal case were known to defendant at the time he retained them and despite this knowledge, defendant acknowledged that it was his choice to have retained counsel handle his case. Interestingly, defendant does not comment on the fact that, for whatever reason, be it a lack of evidence presented by the government on the skill of defendant's trial counsel (or both), the jury was unable to agree on some of the charges.

<u>Appellate Counsel's Performance</u>

Defendant's claim regarding the performance of his retained appellate counsel is that he ". . . somewhat raised on direct appeal [the search warrant issues] but counsel failed to adequate litigate." Defendant's explanation of his counsel's failings is:

> Jon Womack who ineptly challenged the search warrant on direct appeal also prejudiced the petitioner within the meaning of Strickland. His argument with respect to the particularity of the warrant was very uninformed and was not on the merits. He based his argument on the "items to be seized are so vague and so general that they can be found in any home." There is much more to the impermissibly overbroad warrant than what Womack asserted. He did not put sufficient skill and knowledge in his argument especially in light of the fact that there was a general search that followed the overbroad warrant which he failed to mention to the Court. Indeed the appellate court's plain error review was brief and conclusory, however Womack did not give the court much to review. He cited Groh v. Ramirez, 157 L.Ed.2d 1068 (2004) to bolster petitioner's claim when the search warrants in these two cases can't reasonably be compared.

> Nevertheless, the warrant in the instant case falls miserably short of meeting Fourth Amendment requirements. Womack failed to adequately litigate petitioner's Fourth Amendment claims. Kimmelman v. Morrison, 477 U.S. 365 (1986). If he would have explained to the court, more in depth, how the warrant was impermissibly overbroad on its face as well as how the officers executed the warrant with "flagrant disregard" for its terms, searching for evidence of other crimes as petitioner demonstrates herein, there is a reasonable probability the result of the proceeding would have been different.

The panel of judges who rejected defendant's direct appeal might well disagree with defendant's description of their review as "brief and conclusory." Yet despite the fact that defendant (or more likely the jail house lawyer who probably prepared defendant's motion) professes to know what conclusory means, that is an exact description of his claims regarding appellate counsel's performance.

### Applicable Law

It is well-established that ". . . a § 2255 petition is not an appropriate vehicle to raise issues that should have been raised on direct appeal." United States v. Bolden, 472 F.3d 750, 751 (10th Cir. 2006), cert. denied, 127 S. Ct. 2081 (2007). To overcome this procedural bar, a defendant must show both cause for and prejudice from his failure to raise the claims on direct appeal. United States v. Magleby, 420 F.3d 1136, 1139 (10th Cir. 2005), cert. denied, 126 S. Ct. 1879 (2006). Defendant apparently believes he can overcome the procedural bar by claims of ineffective assistance of his retained trial and appellate counsel.

The two-part burden which a defendant must meet in order to prevail on an ineffective assistance of counsel claim was summarized in United States v. Chavez-Marquez, 66 F.3d 259 (10th Cir. 1995):

> To prevail on this claim, defendant must meet the two-

> prong test set forth in Strickland v. Washington, 466
> U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
> First, defendant "must show that counsel's representation
> fell below an objective standard of reasonableness." Id.
> at 688, 104 S. Ct. at 2064; see also Romero v. Tansy, 46
> F.3d 1024, 1029 (10th Cir.), cert. denied, [515] U.S.
> [1148], 115 S. Ct. 2591, 132 L.Ed.2d 839 (1995). Under
> the second prong, defendant must show "that there is a
> reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceedings
> would have been different." Strickland, 466 U.S. at 694,
> 104 S. Ct. at 2068; see also Hatch v. Oklahoma, 58 F.3d
> 1447, 1457 (10th Cir. 1995).

Id. at 262. The failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. See Strickland, 466 U.S. at 700, 104 S. Ct. at 2071. "The Supreme Court has observed that often it may be easier to dispose of an ineffectiveness claim for lack of prejudice than to determine whether the alleged errors were legally deficient." United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993). A defendant's proof must overcome the "strong presumption" that counsel was effective. Id. Strategic choices of attorneys are given great deference and the court will not question tactical decisions of trial counsel. Trial strategies necessarily evolve without the benefit of hindsight. A high level of deference is afforded to the reasonableness of counsel's performance in light of all the circumstances at the time. See United States v. Dean, 76 F.3d 329, 334 (10th Cir. 1996); see also Williamson v. Ward, 110 F.3d 1508, 1513-14 (10th Cir. 1997).

The standard for effective assistance of appellate counsel is essentially the same as for trial counsel. The right to effective assistance of appellate counsel does not require an attorney to advance every conceivable argument on appeal which the record

-9-

supports. Rather, counsel's choice of issues for appeal must not fall below the objective standard of reasonableness required by Strickland. See Whitmil v. Armontrout, 42 F.3d 1154, 1156 (8th Cir. 1994), cert. denied, 116 S. Ct. 249 (1995) and Gray v. Greer, 800 F.2d 644, 647 (7th Cir. 1985). Obviously, appellate counsel cannot be found ineffective for failing to raise claims which the record demonstrates have no merit. See Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998), cert. denied, 119 S. Ct. 1053 (1999) (citing United States v. Cook, 45 F.3d 388 (10th Cir. 1995)). Appellate counsel will be deemed ineffective if he or she fails to assert a "dead-bang winner," i.e., "an issue which was obvious from the trial record . . . and one which would have resulted in a reversal on appeal." Cook, 45 F.3d at 395.

### Discovery Request

Defendant requests that the court permit him to serve interrogatories on government counsel, police officers and various witnesses and to appoint counsel to take depositions from these individuals, including his defense counsel. Defendant repeatedly states that he "suspects" that discovery will prove his claims that the government failed to meet its Brady obligations. Defendant relies on Pennsylvania v. Ritchie, 107 S. Ct. 989 (1987) which, in turn, cites Brady's rule that the government must turn over to the defense evidence in its possession which is both favorable to the defendant and is material to guilt. Evidence is "material" only if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Id. 107 S. Ct. at 1001.

Ritchie does not involve Fed. R. Crim. P. 17 or the rules pertaining to motions pursuant to § 2255. It does not stand for the proposition that a defendant is entitled to discovery, much less broad discovery, in a post-conviction matter based on the defendant's "suspicion" that a Brady violation has occurred. On the contrary:

> A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files. See United States v. Bagley, supra, 473 U.S., at 675, 105 S. Ct., at 3380; United States v. Agurs, supra, 427 U.S., at 111, 96 S. Ct., at 2401. Although the eye of an advocate may be helpful to a defendant in ferreting out information, Dennis v. United States, 384 U.S. 855, 875, 86 S. Ct. 1840, 1851, 16 L. Ed. 2d 973 (1966), this Court has never held-even in the absence of a statute restricting disclosure-that a defendant alone may make the determination as to the materiality of the information. Settled practice is to the contrary. In the typical case where a defendant makes only a general request for exculpatory material under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance. See Weatherford v. Bursey, 429 U.S. 545, 559, 97 S. Ct. 837, 846, 51 L. Ed. 2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case, and Brady did not create one").

Id. 107 S. Ct. at 1002.

Thus the court is not required to grant, and will not grant, defendant's broad request for discovery. Instead, the court has carefully read defendant's motion with a view to identifying a request for discovery of a particularized piece of evidence which arguably might demonstrate a Brady violation. Defendant asserts:

> According to officer Brian Goward-ID#2147, incident report (discovery BS0021)he spoke with Red Lobster employee, Chantelle Frey, immediately after the robbery.

-11-

>  Quite naturally Goward had to ask Frey something pertaining to suspect information. For example, can you identify the suspect or could you see his face? Petitioner requests the court to order the prosecution to produce page BS0040 and BS0042 of the discovery in its entirety. These two documents were written by Goward on July 4 and 5, 2004, titled "Supplemental Information." The copy that petitioner has of these (2) reports are totally blank, besides Goward and his supervisor's signature at the bottom. Why? Of course petitioner can't be sure about something that he has never saw before, however petitioner suspects that the (2) reports initially contained information that totally refutes Frey's positive identification of petitioner cited in Walker's affidavit. These reports may contain another eyewitness' account expressing the impossibility of any identification of the robber.

Conclusion

With extreme reluctance, the court directs the government to produce, in camera, pp. BS0040 and BS0042, which the court will review in accordance with Brady standards. Production must occur on or before March 28, 2008. The court will then make such orders as may be necessary to bring this case to a final conclusion. Defendant is prohibited from filing any additional submissions unless and until the court permits him to do so.

IT IS SO ORDERED.

Dated this __13th__ day of March 2008, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE