IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                         Case No. 04-10174-01-JWB

BRUCE SEARS,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. 167.[1]) The motion has been fully briefed and is ripe for decision. (Docs. 169, 179, 181, 182.) For the reasons stated herein, Defendant's motion is DENIED.

**I. Facts and Procedural History**

In 2005, a federal jury convicted Defendant on four counts: one count of Hobbs Act Robbery in violation of 18 U.S.C. § 1951; one count of unlawfully using, carrying, and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(a); and two counts of unlawful possession of a firearm by a previously convicted felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 58.) The charges sprang from a July 4, 2004 robbery of a Red Lobster restaurant by Defendant and an accomplice in Wichita, Kansas.[2] Prior to trial, the government filed an information pursuant to 18 U.S.C. § 3559(c)(4) alleging that Defendant had previously been convicted of three separate serious violent felonies under Kansas law, such that a conviction

---

[1] This motion was initially dismissed as a successive § 2255, (Doc. 170), but upon reconsideration the court concluded it should be considered a motion for sentence reduction under § 3582(c)(1)(A). (Doc. 180.)

[2] The indictment also charged Defendant with three additional offenses relating to a separate robbery, but the jury was unable to reach a verdict on those counts and they were subsequently dismissed. (Doc. 61.)

of a serious violent felony in the instant case (*i.e*, the § 1951 charge) would result in a mandatory sentence of life imprisonment under § 3559(c)(1). (Doc. 42.[3]) A Presentence Report (PSR) compiled after trial found Defendant was in fact subject to a mandatory life sentence. No objections to the PSR were filed. The trial judge sentenced Defendant to life imprisonment. Judgment was entered on March 1, 2005. (Doc. 61.) A direct appeal by Defendant, which challenged the district court's denial of a motion to suppress, was unsuccessful. (Doc. 94.)

The "three strikes" provision under which Defendant was sentenced, 18 U.S.C. § 3559(c)(1), provided in part that "[n]otwithstanding any other provision of law, a person who is convicted in a court of the United States of a serious violent felony shall be sentenced to life imprisonment if – (A) the person has been convicted … on separate prior occasions … of – (i) 2 or more serious violent felonies…." The term "serious violent felony" was defined in part to include "(i) a Federal or State offense, by whatever designation and wherever committed, consisting of … robbery (as described in section 2111[4], 2113, or 2118)," or an attempt to commit such an offense, and "(ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another…." 18 U.S.C. § 3559(c)(2). However, robbery or an attempt to commit robbery "shall not serve as a basis for sentencing under this subsection if the defendant establishes by clear and convincing evidence that – (i) no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense; and (ii) the offense did not result in death or serious bodily injury … to any person."

---

[3] The information filed by the government alleged that Defendant had three prior Kansas convictions for serious violent felonies and identified them as: (1) attempted robbery (Case No. 92CR266, Reno County); (2) aggravated robbery (Case No. 93CR 1660 (Sedgwick County); and (3) aggravated robbery (Case No. 93CR2092). (Doc. 42.) The Presentence Report indicated that in the second case (93CR1160), Defendant was initially charged with aggravated robbery but was actually convicted of attempted aggravated assault. (PSR ¶ 52.)

[4] This provision describes robbery as applying to "[w]hoever … by force and violence, or by intimidation, takes or attempts to take from the person or presence of another anything of value…." 18 U.S.C. § 2111.

(*Id*.) The PSR found that because of § 3559(c)(1) and the government's information of prior offenses, "both [the] statute and guidelines mandate life imprisonment." (*Id.* ¶ 44.)

Defendant points out that in *United States v. Nicholas*, 686 F. App'x 570 (10th Cir. 2017) and *United States v. Bong,* 913 F.3d 1252 (10th Cir. 2019), the Tenth Circuit held that the degree of physical force required to commit robbery in Kansas does not rise to the level of physical force necessary for a "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). The definition of a "violent felony" under the ACCA is similar – although not identical – to the definition of a "serious violent felony" in § 3559, the law under which Defendant was sentenced. Defendant notes that his mandatory life sentence was based in part on prior Kansas convictions for attempted and aggravated robbery, and he contends by virtue of *Nicholas* and *Bong* these convictions "would plainly no longer qualify as predicates supporting that mandatory sentence."[5] (Doc. 179 at 8.) Defendant asserts that under current law, a person who committed the same offenses he did, and with the same background, would face a maximum advisory guideline sentence of 189 months.

Defendant's motion under § 3582 argues a reduction of his sentence to time-served is appropriate. (Doc. 179 at 6.) Defendant contends the life sentence he received "would no longer apply" given changes in the law since his sentencing, such that there is a "gross disparity between the life sentence he received and the much lower guidelines sentence he would face today for the same conduct"; that he has already served more time (over 17 years) than the guideline sentence

---

[5] For purposes of the instant motion, Defendant does not challenge the lawfulness of the sentence imposed upon him. *See* Doc. 179 at 4 (Defendant's motion does "not attack the legality of his sentence" but instead seeks a reduction because "if he were sentenced today for the same crime, he would not be subject to a mandatory life sentence, but a radically lower sentence.") As Judge Marten previously pointed out, the exclusive remedy for a claim that the sentence was unlawful is a motion under 28 U.S.C. § 2255. Judge Marten considered a prior motion by Defendant alleging that his sentence was unlawful as a § 2255 and transferred it to the Tenth Circuit because it was a second or subsequent § 2255 that required authorization by the Tenth Circuit. *See* 28 U.S.C. § 2255(h). The Tenth Circuit dismissed the motion, however, after Defendant refused to seek authorization to file it as a § 2255 and insisted it be treated as a motion for writ of audita querela. (Doc. 152.)

that would apply to a person committing a similar offense today; that his rehabilitation efforts and work history in Bureau of Prisons' (BOP) custody favor a reduction; and that family circumstances, including that his children's mother is battling cancer and his youngest son is severely autistic and requires constant supervision, also favor a reduction.  (*Id.* at 6-7.)

The government contends a review of Defendant's circumstances shows that he engaged in violent robberies and assaults "for the better part of his life" before engaging in the instant "extraordinarily violent" robbery.  (Doc. 181 at 8.)  It notes that by age 32 he was classified in Criminal History Category VI under the guidelines.  The government points out that the sentencing judge stated that the sentence "harsh as it is, is just punishment" and that he "would impose this sentence even in the absence of guidelines or mandatory sentences" because Defendant's criminal activity was escalating and was likely to result in others being injured or killed.  (*Id.* at 10.)  The government further asserts that Defendant has done little to better himself while incarcerated.  It argues Defendant has failed to demonstrate extraordinary and compelling reasons for a reduction.

**II.  Legal Standards**

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but [that] rule of finality is subject to a few narrow exceptions." *United States v. McGee*, 992 F.3d 1035, 1041 (10th Cir. 2021) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)). One exception is found in the "compassionate release" provision of 18 U.S.C. § 3582(c)(1)(A)(i), which allows a reduction when certain conditions are met including "extraordinary and compelling reasons warrant such a reduction…."  Prior to 2018, that section only authorized the Director of the Bureau of Prisons to move for a reduction. *McGee*, 992 F.3d at 1041. The First Step Act changed this to allow a defendant to file his own motion for reduction after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a

4

motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *United States v. Mata-Soto*, No. 20-3223, 2021 WL 3520599, at *1 (10th Cir. Aug. 11, 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Tenth Circuit has endorsed a three-step test for district courts to use in deciding motions filed under § 3582(c)(1)(A). *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)). Under that test, the court may reduce a sentence if Defendant has administratively exhausted his claim and three other requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a). *Id*. A court may deny the motion when any of the three requirements is lacking and the court need not address the other requirements. *Id*. at 1043. But all requirements must be addressed when the court grants a motion for release under the statute. *Id*. With respect to the second requirement, the applicable policy statements, the Tenth Circuit has held that the current policy statement on extraordinary circumstances is not applicable to motions filed by a defendant. *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021). *See United States v. Vargas*, No. 13-10193-JWB, 2021 WL 4623586, at *1 (D. Kan. Oct. 7, 2021).

The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed training, care, or treatment in the most effective manner;  (3) the kinds of sentences available; (4) the kinds of sentences and sentencing

range established for the offense at the time of sentencing, (5) any pertinent policy statement in effect at the time of the defendant's sentencing, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *Id*. § 3553(a)(1)-(7). *See United States v. Cash*, No. 21-7027, 2021 WL 4911068, at *2 (10th Cir. Oct. 21, 2021).

Defendant bears the burden of establishing that compassionate release is warranted under the statute. *See, e.g., United States v. Dial*, No. 17-20068-JAR, 2020 WL 4933537 (D. Kan. Aug. 24, 2020); *United States v. Dixon*, No. 18-10027-02-JWB, 2020 WL 6483152, at *2 (D. Kan. Nov. 4, 2020).

### III. Analysis

Defendant cites a letter indicating he exhausted BOP remedies on his motion. (Doc. 167.) The government does not contest the showing. (Doc. 181 at 3.) Accordingly, the court finds Defendant has exhausted his administrative remedies.

At the outset, the court recognizes its discretionary authority, on an individualized basis, to consider whether changes in the law since the time of sentencing, in conjunction with other circumstances, amount to extraordinary and compelling reasons for a sentence reduction. This conclusion follows from *United States v. McGee,* 992 F.3d 1035 (10th Cir. 2021) and *United States v. Maumau,* 993 F.3d 821 (10th Cir. 2021). For purposes of the instant motion, it appears undisputed that a person sentenced today for the same offenses Defendant committed would not be subject to a mandatory life sentence and would be facing an advisory guideline range (maximum) of approximately 15 years, well below the life sentence imposed on Defendant.

Notwithstanding the foregoing, the court's consideration of the § 3553(a) factors leads it to conclude Defendant's motion for sentence reduction should be denied. One of the § 3553(a)

factors examines the nature and circumstances of the offense and the history and characteristics of the defendant. On this point the record and the PSR show that, prior to his incarceration on this sentence, Defendant engaged in repeated criminal conduct involving firearms and actual or threatened violence. His first adult conviction was in 1992 at age 19 for attempted robbery. (PSR ¶ 48.) Multiple victims were able to identify Defendant as the person who attempted to rob them at gunpoint. (*Id*.) A few months later, Defendant was convicted of felony theft and burglary of a vehicle. (PSR ¶ 49). Defendant was also convicted of DUI. (PSR ¶ 50.) At age 21, Defendant was convicted of an aggravated robbery in which he approached the victim, produced a firearm, and demanded the victim's money. After the victim produced what money he had, Defendant threatened him and told him not to call the police. (PSR ¶ 51.) Also at age 21, Defendant committed an attempted aggravated assault in the course of Defendant and his brother robbing two victims at gunpoint and his brother firing several shots into the air. (PSR ¶ 52.) The latter offenses were committed while Defendant was still on probation or parole from prior offenses. Defendant was returned to prison at least twice for parole violations in 2002-03 before his sentences expired in February 2004. (PSR ¶¶ 51, 52.)

The instant offenses were committed a few months later, in July 2004, when Defendant and an accomplice entered a Red Lobster restaurant at night to rob it. One of the employees, a 17-year old female, testified how Defendant and his accomplice came into the restaurant, with Defendant producing a gun, pointing it in her face, and demanding to know where the safe was. After she said she didn't know, Defendant[6] "turned to walk off and [then] back-handed me on the right side of my jaw with the gun." (Doc. 88 at 124-25.[7]) A 20-year-old male employee testified

---

[6] Both men wore panty hose masks during the robbery, but the witness later identified Defendant from a photo lineup as the man who hit her. (Doc. 88 at 143.)
[7] The page citations refer to the trial transcript page numbers, not the ECF document page numbers.

7

how Defendant proceeded to walk over to him, point the gun at him, and demanded that he open the safe and a drawer. When the employee had trouble finding the key to the drawer, Defendant "stuck the gun up to my head and told me to stop fucking around." (*Id.* at 153.) After the employee got the drawer open, Defendant told him to get on the ground. After clearing out the cash drawer, Defendant took the employee's cell phone and walked away. The employee slowly got up and was walking out of the room when he encountered Defendant again and they got into a scuffle. The employee remembered being hit on the right side of the head with the gun. He later required five stitches over his eye. The female employee mentioned above testified she saw Defendant hit the male employee with the gun, causing a part of the gun to fall off and onto the floor. The two robbers then both began kicking the male employee as he was on the floor.

Another employee saw the two men kicking and hitting the employee and yelled at them. The two men then ran out of the door. (*Id.* at 178.) Defendant was arrested about ten days later driving a vehicle matching the description of the robbery getaway vehicle. A search of Defendant's residence turned up a semi-automatic handgun matching the description of the one used in the robbery. (PSR ¶¶ 22-25.)

As the government argues, Defendant's conduct before being incarcerated on the instant offenses already showed a pattern of engaging in violent offenses. Defendant was undeterred from criminal conduct by previous stints in prison. He has demonstrated a pattern of possessing firearms and using them in violent offenses despite his status as a convicted felon. Moreover, at sentencing in this case Defendant denied any involvement in or knowledge of the offenses. (Doc. 91 at 7.) After considering the nature of the offenses and Defendant's history and characteristics, the court concludes that they weigh strongly against any reduction in sentence.

Other § 3553(a) factors include the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. The instant offenses were extremely serious in nature. An examination of the evidence shows that Defendant not only used a firearm to commit the robbery, but also assaulted two restaurant employees in the process, including by smacking a 17-year-old female employee in the jaw with a gun for no apparent reason, by threatening a 20-year-old male employee by putting a gun to his head, and by hitting the same employee in the head with the gun so hard that a part of the gun broke off and fell on the floor. It is fortunate that no one was killed in the episode. The victims were undoubtedly traumatized by these acts. Prior episodes of incarceration apparently did nothing to curb Defendant's propensity to engage in violent offenses with firearms. The life sentence imposed in this case is consistent with the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. The severe sentence imposed may tend to further the interest in deterring others from engaging in such behavior, and it will clearly protect the public from any further crimes committed by Defendant.

The court has considered the other § 3553(a) factors as well. The fact that the mandatory life sentence applied to Defendant would not apply to a person committing a similar offense today, and that the guideline range for such a person today would be substantially less than Defendant's guideline range, merit serious consideration, but on balance they do not outweigh Defendant's demonstrated propensity to possess firearms and commit violent acts despite prior criminal justice sentences and periods of incarceration. Defendant's asserted attempts at rehabilitation have also been considered by the court. As the government points out, Defendant's educational efforts while in prison actually appear quite minimal given that he has now been incarcerated over seventeen years. (Doc. 179-1 at 1.) The court is not persuaded that there are extraordinary and compelling

9

reasons for a sentence reduction. The sentencing judge recognized that under the circumstances, the overriding concern in light of Defendant's history was the need to impose a sentence that would protect the public from further crimes by Defendant, and stated that he would have imposed the life sentence even if it were not mandatory. That concern for public safety is undiminished, even with the passage of time.

## IV. Conclusion

Defendant's motion for compassionate release under § 3582(c)(1)(A) (Doc. 167) is DENIED. IT IS SO ORDERED this 8th day of December, 2021.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT COURT