IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                   Case No. 04-10174-JWB

BRUCE SEARS,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 202.) The motion is fully briefed and is ripe for decision. (Docs. 203, 206.) For the reasons stated herein, the motion is DENIED.

**I. Facts and Procedural History**

Defendant filed a prior motion for sentence reduction that the court denied on December 8, 2021, and again upon reconsideration on February 9, 2022. (Docs. 183, 190.) On September 2, 2022, Defendant filed the instant motion, which seeks a reduction based largely upon the same set of circumstances cited in the prior motion, except Defendant now argues that the recent death of his fiancée contributes to the circumstances warranting a reduction. Defendant's prior motion alleged that his fiancée was fighting stage IV cancer while being the sole caregiver for their (now) 17-year-old son with severe autism, and that the son requires around-the-clock supervision, including someone to bathe and dress him, and will require life-long care. (Doc. 167 at 8; Doc. 182 at 5.) The instant motion shows that Defendant's fiancée died on February 28, 2022, and Defendant asserts that the responsibility of providing care for the 17-year-old has now fallen on

Defendant's two other sons, ages 21 and 20. Defendant contends this is an extreme hardship and argues his release is warranted because "there is no viable caregiver who is up to the task of [caring for his 17-year-old son] as he deserves."[1] (Doc. 202 at 10.) Defendant additionally argues a sentence reduction is warranted because he is serving "an unduly harsh [life] sentence" that would not apply to an offender committing the same offense today, because of the young age at which he committed his predicate offenses, because of certain concessions made by the court in prior rulings, because of the time he has already served (18 years) for the offense, and because of his efforts at rehabilitation. (*Id.* at 3.)

**II. Standards**

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but [that] rule of finality is subject to a few narrow exceptions." *United States v. McGee*, 992 F.3d 1035, 1041 (10th Cir. 2021) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)). One exception is found in the "compassionate release" provision of 18 U.S.C. § 3582(c)(1)(A)(i), which allows a reduction when certain conditions are met including "extraordinary and compelling reasons warrant such a reduction...." Prior to 2018, that section only authorized the Director of the Bureau of Prisons to move for a reduction. *McGee*, 992 F.3d at 1041. The First Step Act changed this to allow a defendant to file his own motion for reduction after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *United States v. Mata-Soto*, 861 F. App'x 251, 253 (10th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). Although § 3582(c)(1)(A) requires exhaustion before a court may consider a motion for compassionate release, the exhaustion

---

[1] The only medical assessment of the child cited by Defendant is a 2007 report from when the child was less than three years old. (Doc. 202-3.)

2

requirement "is a claim-processing rule," not a jurisdictional requirement, and thus may be waived or forfeited by the government. *United States v. Hemmelgarn*, 15 F.4th 1027, 1030-31 (10th Cir. 2021).

The Tenth Circuit has endorsed a three-step test for district courts in deciding motions filed under § 3582(c)(1)(A). *McGee*, 992 F.3d at 1042 (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)). Under that test, the court may reduce a sentence if three requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a). *Id*. A court may deny the motion when any of the three requirements is lacking and the court need not address the other requirements. *Id*. at 1043. But all requirements must be addressed when the court grants a motion for release under the statute. *Id*. With respect to the second requirement, the applicable policy statements, the Tenth Circuit has held that the current policy statement on extraordinary circumstances is not applicable to motions filed by a defendant. *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021); *United States v. Vargas*, No. 13-10193-JWB, 2021 WL 4623586, at *1 (D. Kan. Oct. 7, 2021). Defendant bears the burden of establishing that compassionate release is warranted under the statute. *See, e.g., United States v. Moreno*, 519 F. Supp. 3d 937, 941 (D. Kan. 2021).

The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed training, care, or treatment in the most

effective manner; (3) the kinds of sentences available; (4) the kinds of sentences and sentencing range established for the offense at the time of sentencing, (5) any pertinent policy statement in effect at the time of the defendant's sentencing, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *Id*. § 3553(a)(1)-(7). *See United States v. Cash*, No. 21-7027, 2021 WL 4911068, at *2 (10th Cir. Oct. 21, 2021).

### III. Analysis

Defendant cites letters showing he has exhausted BOP remedies on his motion, which the government does not contest. (Docs. 202-7, 202-16, Doc. 203 at 2 n.3.) The court finds the exhaustion requirement is satisfied.

The court again recognizes its discretionary authority, on an individualized basis, to consider whether changes in the law since the time of sentencing, in conjunction with other circumstances, amount to extraordinary and compelling reasons for a sentence reduction. *See McGee,* 992 F.3d 1035 and *Maumau,* 993 F.3d 821. In that regard, the court accepts Defendant's uncontested assertion that a person sentenced today for the same offenses committed by Defendant would not be subject to a mandatory life sentence and would be facing a maximum advisory guideline sentence of approximately 15 years, well below the mandatory life sentence imposed on Defendant.

The court has also considered Defendant's family circumstances, including the recent death of his fiancée and the need for care required by their 17-year-old son with severe autism. The death of the caregiver of a defendant's minor child can be an extraordinary and compelling reason for a sentence reduction. *See* U.S.S.G. § 1B1.13, n. 1(C). But Defendant's showing is not sufficiently compelling to warrant the granting of his motion for release. Defendant asserts

4

somewhat vaguely that his 21-year-old and 20-year-old sons have been "designated as sole caregiver[s]" of their younger brother and argues that such an arrangement is an unfair burden upon these two young individuals. (Doc. 202 at 2.) Yet no showing has been made that these family members are unable to provide care for the 17-year-old. *Cf. United States v. Mitchell*, No. 16-CR-34-FPG, 2022 WL 1025032, at *5 (W.D.N.Y. Apr. 6, 2022) ("[T]he burden that Defendant's incarceration has placed on the other caregivers of his children is an unfortunate, all-too-common reality of incarceration, whether said children have special needs or not. While it may be overwhelming and challenging, there is insufficient evidence that the present situation [the caregiver] faces is approaching the point that she is wholly incapable of providing care for her son."). Moreover, Defendant's motion and letters include references to numerous other family members, but he does not state or explain why these other family members would not be capable of providing care to the 17-year-old. *See United States v. Myrick*, No. 12-CR-385 (ARR), 2020 WL 6128943, at *5 (E.D.N.Y. Oct. 19, 2020) ("Courts in this circuit have repeatedly found that similar challenging circumstances do not warrant release when … there may be other family members available to care for the children.") The circumstances shown by Defendant fall short of establishing extraordinary and compelling family circumstances warranting a sentence reduction. Even if they did qualify as extraordinary circumstances, however, the court still concludes, as it did before, that the § 3553(a) factors weigh against a sentence reduction.[2]

In 2005, a federal jury convicted Defendant on four counts: one count of Hobbs Act Robbery in violation of 18 U.S.C. § 1951; one count of unlawfully using, carrying, and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(a); and

---

[2] The following discussion incorporates numerous findings from the court's December 8, 2021 order (Doc. 183) denying Defendant's prior motion for sentence reduction (Doc. 167). As to those findings, the court concludes that the circumstances are materially unchanged and that the § 3553(a) factors still weigh against a sentence reduction.

two counts of unlawful possession of a firearm by a previously convicted felon in violation of 18 U.S.C. § 922(g)(1).  (Doc. 58.)  The charges sprang from a July 4, 2004 robbery of a Red Lobster restaurant by Defendant and an accomplice in Wichita, Kansas.[3]  Prior to trial, the government filed an information pursuant to 18 U.S.C. § 3559(c)(4) alleging that Defendant had previously been convicted of three separate serious violent felonies under Kansas law, such that a conviction of a serious violent felony in the instant case (*i.e*, the § 1951 charge) would result in a mandatory sentence of life imprisonment under § 3559(c)(1).  (Doc. 42.[4])  A Presentence Report (PSR) compiled after trial found Defendant was in fact subject to a mandatory life sentence.  No objections to the PSR were filed.  The trial judge sentenced Defendant to life imprisonment.  Judgment was entered on March 1, 2005.  (Doc. 61.)  A direct appeal by Defendant, which challenged the district court's denial of a motion to suppress, was unsuccessful.  (Doc. 94.)

The "three strikes" provision under which Defendant was sentenced, 18 U.S.C. § 3559(c)(1), provided in part that "[n]otwithstanding any other provision of law, a person who is convicted in a court of the United States of a serious violent felony shall be sentenced to life imprisonment if – (A) the person has been convicted … on separate prior occasions … of – (i) 2 or more serious violent felonies…."  The PSR found that because of § 3559(c)(1) and the government's information of prior offenses, "both [the] statute and guidelines mandate life imprisonment."  (PSR ¶ 44.)

Defendant points out that in *United States v. Nicholas*, 686 F. App'x 570 (10th Cir. 2017) and *United States v. Bong,* 913 F.3d 1252 (10th Cir. 2019), the Tenth Circuit held that the degree

---

[3] The indictment also charged Defendant with three additional offenses relating to a separate robbery, but the jury was unable to reach a verdict on those counts and they were subsequently dismissed.  (Doc. 61.)
[4] The information filed by the government alleged that Defendant had three prior Kansas convictions for serious violent felonies and identified them as: (1) attempted robbery (Case No. 92CR266, Reno County); (2) aggravated robbery (Case No. 93CR 1660 (Sedgwick County); and (3) aggravated robbery (Case No. 93CR2092).  (Doc. 42.)  The Presentence Report indicated that in the second case (93CR1160), Defendant was initially charged with aggravated robbery but was actually convicted of attempted aggravated assault.  (PSR ¶ 52.)

of physical force required to commit robbery in Kansas does not rise to the level of physical force necessary for a "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). The definition of a "violent felony" under the ACCA is similar – although not identical – to the definition of a "serious violent felony" in § 3559, the law under which Defendant was sentenced. Defendant notes that his mandatory life sentence was based in part on prior Kansas convictions for attempted and aggravated robbery, and he contends by virtue of *Nicholas* and *Bong* these convictions "would plainly no longer qualify as predicates supporting that mandatory sentence."[5] (Doc. 202 at 12.) Defendant asserts that under current law, a person who committed the same offenses he did, and with the same background, would face a maximum advisory guideline sentence of 189 months. Defendant notes he has already served more than 189 months of his life sentence and argues there is a gross disparity between his sentence and the sentence a similarly-situated defendant would receive today for the same offense.

One § 3553(a) factor examines the nature and circumstances of the offense and the history and characteristics of the defendant. The record and the PSR show that, prior to his incarceration on this sentence, Defendant engaged in repeated criminal conduct involving firearms and actual or threatened violence. His first adult conviction was in 1992 at age 19 for attempted robbery. (PSR ¶ 48.) Multiple victims were able to identify Defendant as the person who attempted to rob them at gunpoint. (*Id*.) A few months later, Defendant was convicted of felony theft and burglary of a

---

[5] For purposes of the instant motion, Defendant does not challenge the lawfulness of the sentence imposed upon him. *See* Doc. 202 at 18 ("I am not challenging the validity of my sentence….") Defendant does argue, however, that "the Court has strongly taken the position that under Tenth Circuit precedent my punishment is 'infirm,'" and argues a finding of extraordinary circumstances is warranted "when the Court admits that my sentence is fundamentally flawed…." (*Id.* at 18-19.) As Judge Marten previously pointed out, the exclusive remedy for any claim that the sentence was unlawful is a motion under 28 U.S.C. § 2255. Judge Marten considered a prior motion by Defendant alleging that his sentence was unlawful as a § 2255 and transferred it to the Tenth Circuit because it was a second or subsequent § 2255 that required authorization by the Tenth Circuit. *See* 28 U.S.C. § 2255(h). The Tenth Circuit dismissed the motion, however, after Defendant refused to seek authorization to file it as a § 2255 and insisted that it be treated as a motion for writ of audita querela. (Doc. 152.)

vehicle. (PSR ¶ 49). Defendant was also convicted of DUI. (PSR ¶ 50.) At age 21, Defendant was convicted of an aggravated robbery in which he approached the victim, produced a firearm, and demanded the victim's money. After the victim produced what money he had, Defendant threatened him and told him not to call the police. (PSR ¶ 51.) Also at age 21, Defendant committed an attempted aggravated assault in the course of Defendant and his brother robbing two victims at gunpoint and his brother firing several shots into the air. (PSR ¶ 52.) The latter offenses were committed while Defendant was still on probation or parole from prior offenses. Defendant was returned to prison at least twice for parole violations in 2002-03 before his sentences expired in February 2004. (PSR ¶¶ 51, 52.)

The instant offenses were committed a few months later, in July 2004, when Defendant and an accomplice entered a Red Lobster restaurant at night to rob it. One of the employees, a 17-year-old female, testified how Defendant and his accomplice came into the restaurant, with Defendant producing a gun, pointing it in her face, and demanding to know where the safe was. After she said she didn't know, Defendant[6] "turned to walk off and [then] back-handed me on the right side of my jaw with the gun." (Doc. 88 at 124-25.[7]) A 20-year-old male employee testified how Defendant proceeded to walk over to him, point the gun at him, and demanded that he open the safe and a drawer. When the employee had trouble finding the key to the drawer, Defendant "stuck the gun up to my head and told me to stop fucking around." (*Id.* at 153.) After the employee got the drawer open, Defendant told him to get on the ground. After clearing out the cash drawer, Defendant took the employee's cell phone and walked away. The employee slowly got up and was walking out of the room when he encountered Defendant again and they got into a scuffle.

---

[6] Both men wore panty hose masks during the robbery, but the witness later identified Defendant from a photo lineup as the man who hit her. (Doc. 88 at 143.)

[7] The page citations refer to the trial transcript page numbers, not the ECF document page numbers.

The employee remembered being hit on the right side of the head with the gun. He later required five stitches over his eye. The female employee mentioned above testified she saw Defendant hit the male employee with the gun, causing a part of the gun to fall off and onto the floor. The two robbers then both began kicking the male employee as he was on the floor.

Another employee saw the two men kicking and hitting the employee and yelled at them. The two men then ran out of the door. (*Id.* at 178.) Defendant was arrested about ten days later driving a vehicle matching the description of the robbery getaway vehicle. A search of Defendant's residence turned up a semi-automatic handgun matching the description of the one used in the robbery. (PSR ¶¶ 22-25.)

Defendant's conduct before being incarcerated on the instant offenses already showed a pattern of engaging in violent offenses. Defendant was undeterred from criminal conduct by previous stints in prison. He demonstrated a pattern of possessing firearms and using them in violent offenses despite his status as a convicted felon. Defendant was 31 years old when he committed the instant offenses. Defendant cites his youth (age 21 or younger) at the time he committed the predicate offenses that enhanced his sentence in this case as a factor favoring a sentencing reduction. (Doc. 202 at 14.) But with respect to the instant offenses, Defendant recognizes that "[a]t 31 years old I can't blame it on my youth," (*Id.* at 15), and viewed as a whole, the record shows that Defendant engaged in offenses involving threats to other persons over a period spanning more than a decade. Moreover, at sentencing in this case Defendant denied any involvement in or knowledge of the instant offenses. (Doc. 91 at 7[8].) After considering the nature of the offenses and Defendant's history and characteristics, the court concludes that they weigh strongly against any reduction in sentence.

---

[8] Defendant's current motion for compassionate release says little about the instant offenses. *See* Doc. 202 at 6-7.

9

Other § 3553(a) factors include the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. The instant offenses were extremely serious in nature. An examination of the evidence shows that Defendant not only used a firearm to commit the robbery, but also assaulted two restaurant employees in the process, including by smacking a 17-year-old female employee in the jaw with a gun for no apparent reason, by threatening a 20-year-old male employee by putting a gun to his head, and by hitting the same employee in the head with the gun so hard that a part of the gun broke off and fell on the floor. It is fortunate that no one was killed in the episode. The victims were undoubtedly traumatized by these acts. Prior episodes of incarceration apparently did nothing to curb Defendant's propensity to engage in violent offenses with firearms. The life sentence imposed in this case is consistent with the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. The severe sentence imposed may tend to further the interest in deterring others from engaging in such behavior, and it will clearly protect the public from any further crimes committed by Defendant.

Defendant cites a study showing that the risk of recidivism decreases with age and argues that based on his current age (49) he is less likely to recidivate if released. (Doc. 202 at 21.) The study cited by Defendant indicates a rearrest recidivism rate of 43.2% for released federal offenders who are 40-49 years of age and 26.8% for offenders 50-59 years old. U.S. Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders (Dec. 7, 2017), https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders.) Although this indicates a declining risk of recidivism based on Defendant's increasing age, these figures also show that the risk posed by Defendant's release would not be insubstantial. Moreover, the court notes the same study found "the type of federal offense that offenders had

committed also had an effect on recidivism across age groups," and that "firearms offenders had a substantially higher rearrest rate across all age categories than drug trafficking offenders" and others. Thus, for offenders aged 60 and older at the time of release, "the rearrest rates were 30.2 percent (firearms), 17.5 percent (drug trafficking), and 12.5 percent (fraud)." *Id.* at p. 3. Given Defendant's history of unlawfully possessing and using firearms, the risk of recidivism and potential harm to the public weighs against his motion for sentence reduction.

The court has considered the other § 3553(a) factors as well. The fact that the mandatory life sentence applied to Defendant would not apply to a person committing a similar offense today, and that the guideline range for such a person today would be substantially less than Defendant's guideline range, merit serious consideration, but on balance they do not outweigh Defendant's demonstrated propensity to possess firearms and commit violent acts despite prior criminal justice sentences and periods of incarceration. Defendant asserts that he was subjected to "a life sentence that the Court admits was erroneously imposed." (Doc. 206 at 4.) Despite Defendant's arguments, however, the court has not "admitted" or "conceded" that assertion and has reiterated to Defendant that the exclusive remedy for any claim that the sentence was unlawful is a motion under 28 U.S.C. § 2255. *See supra* at 7, n.5. *See also United States v. Sears*, 836 F. App'x 697, 699 (10th Cir. 2020) ("Sears's claim for a sentence reduction based on *Nicholas* falls squarely within the scope of § 2255, not § 3582(c)(1)(A)(i).") Moreover, the court notes that, contrary to Defendant's assertion that "my statutory maximum absent the now-inapplicable recidivist enhancements is 20 years," (Doc. 202 at 21), Defendant's convictions on the four offenses found by the jury subjected him to a maximum possible statutory punishment of 20 years on the § 1951 count alone, plus 15 years *each* on the two § 922(g) counts, plus life imprisonment on the § 924(c) count. Sentences on these offenses could have been imposed consecutively, meaning Defendant faced a statutory

11

maximum penalty of 50 years imprisonment based solely on the counts other than the § 924(c) count, plus a potential life sentence on the § 924(c) count.

The court has considered Defendant's efforts at rehabilitation as a factor bearing on the motion for sentence reduction. Defendant's educational and other rehabilitative efforts while in prison are not overwhelming given that he has now been incarcerated over eighteen years. (Docs. 202-10, 202-14). Defendant asserts that lockdowns and other circumstances have reduced his opportunities to participate in programs, and he argues that even if his resume "is not the most outstanding, … some credit is due." (Doc. 202 at 22.) Defendant's participation in educational programs, in employment, and his asserted efforts at ministering to other prisoners, are commendable. But the court is not persuaded that he has shown extraordinary and compelling reasons for a sentence reduction. The sentencing judge recognized that under the circumstances, the overriding concern in light of Defendant's history was the need to impose a sentence that would protect the public from further crimes by Defendant, and stated that he would have imposed the life sentence even if it were not mandatory:

> I do, however, believe that this sentence, harsh as it is, is just punishment. I would impose this sentence even in the absence of guidelines or mandatory sentences for this reason. This Defendant has been involved in this type of activity for years and years; and in my view, his criminal activity is escalating. Had he not been arrested for these offenses, I think the next time someone would have been very seriously injured or perhaps killed because it just was getting worse and worse. And this deters — this sentence will deter the Defendant's criminal conduct at least as far as the public is concerned. I have no idea how he will react once he's in the penitentiary; but it protects the public from further crimes….

(Doc. 91) (Sentencing Transcript (Feb. 25, 2005) at p. 9). As the court noted in its prior order, that concern for public safety is undiminished, even with the passage of time.

## IV. Conclusion

Defendant's motion for sentence reduction (Doc. 202) is DENIED. Defendant's request for appointment of counsel (Doc. 202 at 28) is likewise DENIED. IT IS SO ORDERED this 18th day of November, 2022.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE